UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

SAMUEL M. ACKLEY,

                Plaintiff,        13-CV-6656T

        -v-               DECISION
                            AND ORDER

CAROLYN W. COLVIN, ACTING
Commissioner OF Social Security,

                Defendant.

---

Samuel Ackley("plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied his applications for disability insurance benefits ("DIB") under the Social Security Act.

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## PROCEDURAL HISTORY

On December 14, 2010, plaintiff filed an application for DIB alleging disability as of September 17, 2009 due to right shoulder tendonitis and back pain. Administrative Transcript ("T.") 121-123, 148.  Following an initial denial of that application on January 25, 2011, plaintiff testified at a video hearing that was held at his request on February 29, 2012 before administrative law judge ("ALJ") Scott M. Staller. T. 20-28. An unfavorable decision was

issued on April 27, 2012, and a request for review was denied by the Appeals Council on  October 15, 2013. T. 1, 28.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made the following findings: (1) plaintiff met the insured status requirements of the Act through December 31, 2014; (2) he had not engage in substantial gainful activity since September 17, 2009, the date of the onset of his alleged disability; (3) his right shoulder tendonitis and obesity were severe impairments; (4) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; and (5) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations sit or stand every thirty minutes without leaving work station; frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds; frequently balance and occasionally stoop, kneel, crouch, or crawl; unable to reach overhead with both upper extremities; avoid concentrated exposure to dangerous moving machinery and unprotected heights. T. 22-23.

The Appeals Council declined to review the ALJ's decision, and this action ensued. T 1.

**DISCUSSION**

I.   **General Legal Principles**

 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.

Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).  Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

## II.  <u>Relevant Medical Evidence</u>

The record reflects that plaintiff has been treated for right shoulder pain by Dr. Todd Stein and physician's assistant Raymond Montanaro at Greater Rochester Orthopaedics since September 17, 2009. T. 200.  Plaintiff reported severe pain in his shoulder caused by repetitive overhead motions and lifting. T. 269. Plaintiff was diagnosed with right rotator cuff tendonitis and

right biceps tendonitis resulting from receptive use at work, which consisted of unloading diary pallets at Walmart. T. 200, 202. Plaintiff was initially treated with cortisone injections, physical therapy, and pain medication. T. 202, 204, 207, 238-245.  An MRI did not demonstrate a rotator cuff tear, but it did show symptomatic inflammation in plaintiff's acromioclavicular joint with degeneration and a hooked anterior acromion. T. 204, 208, 224, 240, 265-268.

In May 2010, plaintiff was examined by Dr. Steven Hausmann at the request of plaintiff's workers' compensation insurance carrier. T. 231-234.  Dr. Hausmann opined that the severe pain report by plaintiff with shoulder mobility was "totally inconsistent" with his diagnosis of a degenerative acromioclavicular joint. T. 233. During his examination, Dr. Hausmann noted that plaintiff's range of motion in his shoulder was quite limited, but opined that he could perform unrestricted lifting to waist height and assessed plaintiff's disability as mild. 233-234.

After several months of little improvement in his right shoulder, plaintiff agreed to proceed with surgical treatment, and, on June 3, 2010, Dr. Stein performed acromioplasty, distal clavicle excision, and arthroscopic debridement. T. 209, 210, 226-229, 261-264.  Plaintiff healed well and made slow progress in his recovery, with physical therapy, pain medication, and renewed cortisone shots following the surgery. T. 214, 216, 218, 220-221, 222, 252-259.

At six months post surgery, Dr. Stein noted that plaintiff's physical exam was "essentially the same as it was preoperatively."

T. 251. On July, 1, 2011, Dr. Stein opined that plaintiff had reached maximum improvement and that his condition was permanent, and he recommended "a 50% scheduled loss of use of his right shoulder (40% loss of motion and 10% for distal clavicle excision) as per the Worker's Compensation guidelines of 1996." T. 312.  In April 2011, plaintiff also visited Dr. Stein for an evaluation of pain in his left should, which plaintiff believed to have resulted from overuse. T. 315-316.  The record reflects that plaintiff consistently attended physical therapy sessions since October 2009. T. 269-290, 295-304.

III. **Non-Medical Evidence**

Plaintiff, 40 years old at the time of the hearing, testified that he is five feet seven inches tall and weighed 240 pounds. T. 44.  Plaintiff completed school up to the tenth grade and obtained his G.E.D. T. 45. Since he stopped working on September 17, 2009 due to his shoulder injury, plaintiff received worker's compensation benefits until December 31, 2011. T. 48. He eventually had surgery on his right shoulder, but he testified that his should pain is "not too much better than it was before the surgery," T. 49.  He has limited range of motion his shoulder and can not lift his arm higher than his shoulder. T. 49-50.

Plaintiff also experiences constant pain in his left shoulder as a result of overuse and an childhood injury that had healed improperly. T. 50.  Plaintiff told the ALJ that he also has constant pain in his middle back, which spreads to his lower back and both legs. T. 50-51.  Plaintiff, who lives alone, performs

daily household activities like cooking, cleaning, and maintaining personal hygiene. T. 51-52.  He goes grocery shopping once a month and is able to carry a gallon of milk in each arm. T. 52, 54. Plaintiff's prescription medications, which relieves his symptoms "[t]o a certain extent," causes him to feel drowsy and occasionally dizzy. T. 52.  His "shoulder problem" affects his sleep to the extent that he cannot fall asleep until 3:00 or 4:00 in the morning, after his "medication kick[s] in" and he sleeps until noon or 1:00 P.M., with a nap in the late afternoon. T. 53-54. Plaintiff testified that his arms begin to feel numb if he lifts something, but the numbness goes away when he stops lifting. T. 54. Plaintiff cannot sit for longer than 30 minutes without becoming fatigued in the waist and lower back. T. 55.  He can perform household activities for less than four hours a day, in 20-minute increments before having to rest. T. 55-56.

The ALJ also heard testimony from VE James R. Newton, to whom him posed a hypothetical requesting an opinion whether an individual of plaintiff's age, education, and experience who could perform light work with the following limitations: (1) frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds; (2) frequently balance; (3) occasionally stoop, kneel, crouch, or crawl; (4) be allowed to sit or stand alternatively every 30 minutes, but would not have to leave the work station; (5) unable to reach overhead with both upper extremities; and (6) avoid concentrated exposure to dangerous moving machinery and long unprotected light or heights.  T. 58.

The VE opined that such a person could not perform plaintiff's past work, but could perform the light, unskilled jobs of office helper, gate attender, and ticket seller, or the sedentary, unskilled jobs of table worker, stuffer, and patcher. T. 58-60.  If such an individual was "off task for 20 percent or more of the workday" or missed two or more days of work per month, there would be no jobs. T. 60.  The sedentary-level jobs required occasional reaching and frequent handling. T. 61.  The limitation of occasional handling would rule out any jobs at the sedentary, unskilled level. T. 62.

**IV.       The Commissioner's Decision Denying Benefits is Supported by Substantial Evidence.**

**Treating Source Opinion**

Plaintiff contends that the ALJ failed to properly evaluate the treating source medical opinion of his treating physicians and physician's assistant that he was totally disabled. Plaintiff's memorandum of law, p. 7-11.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  However, "the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), citing 20 C.F.R. § 404.1527(d)(4).

The Commissioner need not grant controlling weight to a treating physician's opinion to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Snell*, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

A corollary to the treating physician rule is the "good reasons" rule, which provides that the Commissioner "'will always give good reasons in its notice of determination or decision for the weight it gives [plaintiffs's] treating source's opinion.'" *Clark v. Commissioner of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998), quoting 20 C.F.R. §§ 404.15279(d)(2), 416.927(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific.'" *Blakely v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009), quoting Social Security Ruling 96-2p, 1996 WL 374188, at *5 (S.S.A. 1996).

Insomuch as the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process" (*Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243 [6th Cir. 2007]), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407, quoting *Rogers*, 486 F.3d at 243.

In his decision, the ALJ finds that plaintiff is limited to performing no greater than light exertional work and plaintiff is unable to reach overhead with either upper extremity. T. 25. The ALJ notes that plaintiff is able to perform daily activities such as driving, cooking simple meals, bathing and dressing himself, performing light household cleaning and grocery shopping. T. 25.

Contrary to plaintiff contention that the ALJ abdicated his responsibility to consider, weigh, and evaluate the findings of plaintiff's treating physicians, the ALJ's decision clearly analyzes the weight that should be afforded to these opinions, stating:

> "The undesigned notes that several exhibits in the medical record contain reports prepared in the context of the workers' compensation claim system . . . Medical reports generated in the context of workers' compensation claim are adversarial in nature. The physicians retained by either party in the context of workers' compensation cases are often biased and do not provide truly objective opinions. The claimant treating physician in the context of a worker's compensation claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery."

T. 25.

The ALJ notes that although plaintiff's treating physicians deemed him to be completely disabled with respect to his workers' compensation claim, the definition of disability in a workers' compensation case is not the same standard required in a Social Security case. T. 25.

Even assuming, *arguendo*, that, as plaintiff asserts, that the ALJ incorrectly stated that the treating physicians' opinions that

he was "totally disabled" concerned his return only to his position as a store laborer, the ALJ goes on to find that their "conclusive statements and percentages of functioning in the context of the workers' compensation system" fail to specify "functional limitations" to the work that plaintiff "would be capable of performing." T. 25. The ALJ, consequently, affords "little weight" to their assessments. T. 25. Given that the determination of whether an individual is disabled is unequivocally a matter reserved for the Commissioner, the ALJ therefore did not err in his assessment of those opinions.

Moreover, the ALJ correctly noted that the determination of disability in the context of a workers' compensation claim uses a different standard than the Social Security Act. *See Rosado v. Shalala*, 868 F.Supp. 471, 473 (E.D.N.Y.1994), citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir.1984) ("an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); *Crowe v. Comm'r*, 2004 WL 1689758, at *3 (N.D.N.Y.2004) (ALJ not required to adopt treating physician's opinion that plaintiff was "totally" disabled where opinion was rendered in worker's compensation claim context).

Here, the ALJ applied the appropriate legal standards when he considered the full record and properly evaluated plaintiff's treating source opinions. His determination was therefore based upon substantial evidence.

## CONCLUSION

For the foregoing reasons the plaintiff's motion for judgment on the pleadings is denied, and defendant's cross-motion for judgment on the pleadings is granted.  The complaint is dismissed in its entirety with prejudice.  The ALJ's decision denying plaintiff's claims for DIB is supported by the substantial evidence in the record.

ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
       April 27, 2015